DONAHUE v DONAHUE

Docket No. 71130. Submitted March 15, 1984, at Lansing.—Decided
    May 15, 1984. Leave to appeal applied for.
    Plaintiff, Beverly A. Donahue, and defendant, John F. Donahue,
        were divorced by judgment of the Bay Circuit Court, Eugene C.
        Penzien, J. Defendant appeals, challenging the appropriateness
        of an award of $14,000 to plaintiff to be used by her to pay
        toward her attorney fees, the equitableness of the division of
        the marital estate, and the correctness of the trial court's
        finding that a $20,000 certificate of deposit and $175,000 in
        bearer bonds had been given to defendant as a gift from his
        father and thus were a part of the marital estate. *Held:*

    1. The trial court did not abuse its discretion in awarding the
    plaintiff $14,000 to be used to pay toward her attorney fees.
    Special circumstances existed in this case justifying the trial
    court's decision not to follow the general rule that attorney fees
    are not awarded as a matter of right but only if necessary to
    enable a party to carry on or defend the litigation.

    2. The relative equity, or lack thereof, of the trial court's
    division of the marital estate turns primarily on whether the
    $195,000 represented by the certificate of deposit and the
    bearer bonds was a gift from defendant's father to defendant
    and was thus part of the marital estate. If the trial court had
    jurisdiction to determine the ownership of the certificate of
    deposit and the bearer bonds and correctly determined that
    ownership to be in defendant, the division of the marital estate
    was more than fair and equitable to defendant.

    3. Under the circumstances of this case the trial court was
    well within its jurisdiction and right to determine the owner-
    ship of the certificate and bonds.

    4. The trial court did not err in determining that the certifi-

REFERENCES FOR POINTS IN HEADNOTES
[1] 24 Am Jur 2d, Divorce and Separation § 591.
    Authority of divorce court to award prospective or anticipated
        attorneys' fees to enable parties to maintain or defend divorce
        suit. 22 ALR4th 407.
[2] 24 Am Jur 2d, Divorce and Separation §§ 269, 951.
[3] 81 Am Jur 2d, Witnesses § 669.

cate and bonds belonged to defendant and were, therefore, part of the marital estate.

Affirmed.

1. APPEAL — ATTORNEY FEES — COURT RULES.

The allowance of attorney fees in an action for divorce, separate maintenance, annulment, or affirmation of marriage, which generally are not awarded as a matter of right but may be awarded if necessary to enable a party to carry on or defend the litigation, basically rests in the sound discretion of the court and will be overturned only where manifest abuse of discretion can be shown (GCR 1963, 726.1).

2. DIVORCE — THIRD PARTIES — CONSPIRACY.

The rule that it is beyond the power of a trial court to adjudicate the rights of third parties in a divorce action is subject to an exception where it is claimed that the third party has conspired with the husband to defraud the wife out of her rightful interest in the marital estate.

3. EVIDENCE — WITNESSES — PERJURY.

A trier of fact may disregard all of a witness's testimony or believe such parts as are corroborated by other testimony where it is found that the witness has testified falsely.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Ralph J. Isackson)*, for plaintiff.

*Weisman, Trogan, Young & Schloss, P.C.* (by *Martin C. Weisman* and *John A. Ruemenapp)*, for defendant.

Before: SHEPHERD, P.J., and ALLEN and A. E. KEYES,* JJ.

PER CURIAM. Defendant husband appeals as of right from a judgment of divorce entered April 15, 1983, which divides the marital estate in accordance with the findings of fact and conclusions of law contained in the trial court's written opinion entered March 22, 1983. The principal issues

---

* Circuit judge, sitting on the Court of Appeals by assignment.

raised on appeal concern: (1) an award of $14,000 to plaintiff wife to be used by her to pay towards her attorney fees; (2) the equitableness of the division of the marital estate; and (3) the trial court's finding that a $20,000 certificate of deposit and $175,000 in bearer bonds had been given to defendant as a gift by his father, Dr. Harold T. Donahue, and thus were a part of the marital estate.

The parties were married on December 15, 1961, and lived together until their separation in April, 1976. During this time two children were born of the marriage. Defendant worked as an electrician, automobile mechanic, carpenter and plumber, and managed drive-in theaters. Plaintiff was never employed, and at the time of trial was taking courses to become a dental assistant. During the marriage the parties accumulated a substantial marital estate, mostly through gifts from their parents. Plaintiff acquired some $53,000 by gift from her father. Defendant's father, Dr. Donahue, gave as gifts to the parties shares of stock in a number of corporations, some of which became quite valuable.

Depending upon whether the $195,000 in bearer bonds (BB) and certificate of deposit (CD) are included or excluded from the marital estate and depending upon whether one accepts the plaintiff's or the defendant's computation, the marital estate as valued at the time of trial was divided as follows:

ACCORDING TO PLAINTIFF
Total value of estate     $758,500 (includes CD and BB)
Awarded wife             357,750
Awarded husband          400,750 (includes CD and BB)

ACCORDING TO DEFENDANT
Total value of estate     $517,000 (excludes CD and BB)
Awarded wife             400,000

| | |
|---|---|
| Awarded husband | 117,000 (after deduction for wife's attorney fees) |
| Retained by Dr. Donahue[1] | 195,000 (CD and BB) |

From testimony taken at trial, it clearly appeared that the principal fault lay with the defendant. During the marriage defendant was away from home many nights. After defendant separated from his wife, he carried on a relationship with another woman and that woman had a child by him. Defendant acknowledged paternity and pays for the child's support. Defendant conceded that he was having sex with plaintiff at the same time he was having sex with this other woman. After defendant left in April, 1976, he did not inform plaintiff or his children where he was living for some two and one-half years.

It also became obvious during the pretrial period that defendant and his parents attempted to conceal from plaintiff the nature and value of the marital estate. Defendant testified during pretrial discovery that he had no interest in any municipal bonds but later admitted that his testimony to that effect was untrue. The first attempt at concealment discovered by the court was during the first day of trial. Defendant told the court that a safe in his apartment contained approximately $1,000 in cash and some income tax forms. An inventory of the contents of the safe revealed that defendant had various valuable undisclosed assets in the safe.

During trial defendant admitted that he knowingly failed to include taxable interest income he

[1] Subsequent to the trial, Dr. Donahue cashed the CD. Mrs. Donahue, defendant's mother, removed the BB from the safe deposit box at the People's Bank, to which defendant had access, and placed them in a box controlled exclusively by her. Thus, although the trial court awarded the CD and BB to defendant, defendant has never received the same, and, according to defendant, the court should not have considered them part of the marital estate.

had received from his savings accounts on his income tax returns, that he purchased bank money orders payable to himself in an effort to conceal money from his wife, and that he left the money orders with his girlfriend, and that his purpose in obtaining them was to conceal the assets from his wife. The record also reveals that defendant's parents aided him in the concealment of his assets. Defendant's mother stated at her pretrial deposition that she had never made a gift to defendant which she had not entered on a gift tax return. She also stated that she had made no gifts to defendant after 1976 as she and her husband "ran out of money". At trial defendant's mother admitted that they had made gifts to him in 1977, 1978, and 1979, and did not file gift tax returns including the gifts. She admitted that they were making an effort to conceal the gifts to defendant. The trial court warned defendant regarding the penalties which could come to bear upon him if he gave perjured testimony.

# I

## Award of Attorney Fees

The trial court awarded plaintiff some $147,500 in cash. Because of this award, defendant argues that the trial court erred in ordering defendant to pay $14,000 toward plaintiff's attorney fees. The court rule governing the payment of attorney fees is GCR 1963, 726.1. At the time of the proceedings in this case, the court rule read:

".1 Attorney Fees and Expenses.
"(1) In an action for divorce, separate maintenance, annulment, or affirmation of marriage, and in subsequent petitions to modify the judgment, either party may request that the court order the other spouse to

pay an attorney the sum specified as necessary to enable that party to carry on or defend the suit.

"(2) The moving party shall allege facts showing that he or she is unable to bear the expense of the action without this aid. The trial judge may require the disclosure of what attorney fees have been paid.

"(3) The court may order, in the judgment or in a separate order, that whatever sum it finds necessary and reasonable be paid to the wife's attorney, either by the husband or out of the assets of the husband over which the court has jurisdiction."

This Court has generally followed the rule that " 'attorney fees are not awarded as a matter of right but only if necessary to enable a party to carry on or defend the litigation' ". *Gove v Gove,* 71 Mich App 431, 435; 248 NW2d 573 (1976), quoting *Mixon v Mixon,* 51 Mich App 696, 700; 216 NW2d 625 (1974); *Vaclav v Vaclav,* 96 Mich App 584, 593; 293 NW2d 613 (1980).

Nevertheless, the rule is not hard and fast and under special circumstances may not be followed. The allowance of attorney fees basically rests in the sound discretion of the court. *Abadi v Abadi,* 78 Mich App 73, 78-80; 259 NW2d 244 (1977), and will be overturned only where manifest abuse of discretion can be shown. *Schilleman v Schilleman,* 61 Mich App 446, 450; 232 NW2d 737 (1975). We think special circumstances existed here. The trial court explained that its reason for granting attorney fees was because "[a]lmost all of these legal fees and expenses are directly attributable to the defendant's efforts to conceal the assets of the parties". The court noted that but for the unusual skill and diligence of plaintiff's counsel, defendant would have been successful in perpetrating a fraud upon the court and would have succeeded in causing a serious miscarriage of justice. Thus, even though the court acknowledged that plaintiff had

some funds from which she could pay her attorney fees, the court was satisfied that the costs of the litigation should be borne by defendant. The court's decision was based on its view of the division of property and the fact that defendant's actions caused plaintiff to incur those costs.

We agree with the trial court. Defendant's actions were reprehensible and disclosed a total lack of respect for the judicial proceedings below. His efforts at concealment of assets caused plaintiff's counsel to go to great lengths in order to ferret out all distributable marital property. It would be inequitable to require plaintiff to pay for expenses which never would have occurred if defendant had conducted himself in an honest and conscientious manner. For these reasons, we find no abuse of discretion and affirm the award of attorney fees.

## II

### EQUITABLENESS OF THE DIVISION OF THE MARITAL ESTATE

The relative equity, or lack thereof, of the trial court's division of the marital estate largely turns on whether $195,000, represented by the certificate of deposit and the bearer bonds, was a gift from Dr. Donahue to his son and thus was part of the marital estate. If the $195,000 was a gift to John Donahue, as earlier noted in this opinion, the total estate was approximately $758,500. Of this, the wife was awarded $357,750 and the husband $400,-750, from which he was to pay $14,000 in attorney fees for his wife. On its face the property division, as so set forth, is more than fair and equitable to the defendant, particularly when defendant was the person primarily at fault. Even if the marital estate were divided according to the figures pre-

sented by defendant, *viz.:* wife $400,000; husband
$117,000, with $195,000 being treated as a gift to
the husband but retained by Dr. and Mrs. Dona-
hue, the property division would still be equitable.[2]
Dr. Donahue and his wife would simply be holding
$195,000 of defendant's share of the marital estate.
If they refused to turn these sums over to defen-
dant, defendant could proceed against them. A
$400,000—$312,000 differential is justified by
many of the factors that the trial court took into
consideration. Among these are the health of the
parties. The facts indicate that plaintiff has had a
radical mastectomy and stands a good chance of
having recurring cancer in the future. Defendant
is in good health. The earning abilities of the
parties also mandate that plaintiff be allowed a
larger share of the marital property. Plaintiff has
never had a job and, despite defendant's conten-
tions, still has not obtained one. Defendant is a
"jack of all trades" and seems to be able to provide
for himself very well. A factor not considered by
the trial court but one we find relevant is the fact
that defendant is in a position to receive gifts from
his father which plaintiff will no longer be able to
share with him. Another reason justifying a sub-
stantial differential is defendant's fault. He was
the person who left the marital home and took up
housekeeping with another woman. Testimony
given at trial reveals that plaintiff made diligent
efforts to reconcile their differences, such as want-
ing to go to a marriage counselor.

The problem is that each of the above two
examples assume that the trial court did not err
when it determined that the certificate of deposit
and bearer bonds were given as gifts to defendant.
The equity is less apparent and well may not exist

---

[2] In this event the wife would receive 400,000, the husband 312,000.

if (a) the CD and BB never became a part of the marital estate, or (b) the trial court was without jurisdiction to determine who was the owner thereof. For, as defendant points out, if the trial court did not have the jurisdiction to determine the ownership or had the jurisdiction and erred, the entire matter of the division of property must be remanded for a redetermination. These questions are examined in part III of this opinion.

## III

### Jurisdiction and Validity of the Trial Court's Determination That $195,000 Was Not the Property of Defendant's Parents

Defendant argues that it was beyond the power of the trial court to adjudicate the rights of third parties in a divorce action—in this case Dr. Harold Donahue and Alice Donahue. In support of this argument defendant relies on *Yedinak v Yedinak,* 383 Mich 409; 175 NW2d 706 (1970). Additional support for this rule is found in *Stock v Stock,* 250 Mich 295, 297; 230 NW 143 (1930), a case not cited in either party's brief. See, also, *Krueger v Krueger,* 88 Mich App 722, 724-725; 278 NW2d 514 (1979), and *Hoffman v Hoffman,* 125 Mich App 488, 490-491; 336 NW2d 34 (1983).

However, the rule is subject to an exception where it is claimed, as it is claimed here, that the third party has conspired with the husband to defraud the wife out of her rightful interest in the marital estate. *Berg v Berg,* 336 Mich 284, 288; 57 NW2d 889 (1953); *Pruitt v Pruitt,* 90 Mich App 230, 233-234; 282 NW2d 785 (1979). This well-recognized exception to the general rule that third party claims may not be resolved in a divorce

action is fully discussed in Anno: *Propriety of consideration of, and disposition as to, third persons' property claims in divorce litigation,* 63 ALR3d 373, 395-399. In the case before us, the proofs clearly showed that both defendant and his parents were concealing assets from the plaintiff. This fact was commented on more than once by the trial court.

Although Dr. and Mrs. Donahue were not made parties to the suit, they were represented by counsel at trial, they testified at length, and they were cross-examined. Likewise, their pretrial depositions were used in examination. Accordingly, we hold that the trial court was well within its jurisdiction and right to determine whether Dr. Donahue and his wife or defendant were the owners of the certificate of deposit and the bearer bonds.

Having found that the trial court had jurisdiction to determine the third parties' interests in the securities, we next inquire whether the trial court erred in determining that the securities did not belong to Dr. and Mrs. Donahue but instead were part of the marital estate. It is defendant's claim that the record is barren of evidence demonstrating that the securities had been given as gifts or otherwise were the "sole and separate" property of the defendant. We disagree.

The $20,000 certificate of deposit at the Mutual Savings & Loan Association had been purchased by Dr. Donahue. It bore the inscription "John Donahue or Harold Donahue" but it had John's social security number on it. It did not bear Dr. Donahue's social security number. Dr. Donahue testified that John collects the interest from the account. John reported the interest received on the certificate in his tax returns. In our opinion sufficient indicia of John's ownership was found to

justify the trial court's finding that the certificate of deposit belonged to defendant.

The bearer bonds bore no name or serial number. The safe deposit box in which the bonds were originally kept was in the joint name of John Donahue and his mother. That box was taken out in 1971 and closed in March, 1978. All entries during that period were made by John. The second box, in the same branch of the bank, was taken out in March, 1978. Again it was in the joint name of John and his mother, and again all entries were made by John. That box was closed in April, 1979, and a new box was taken out in a different branch of the bank. This time *the box was in the name of John alone,* but his mother was authorized to enter the box as a "deputy". John's mother entered the box as deputy three times between April, 1979, and January 27, 1981. After trial commenced on December 30, 1980, she removed $175,-000 of the bonds from the box but left $25,000 of bonds issued by the St. Joseph School District. She placed the bonds so removed in a box in the Manufacturer's Bank in Bay City in her name alone.

We find the issue close. Some testimony and evidence supports the conclusion that the parents never intended to make a gift of the bonds. This was the testimony of the parents who explained that they only placed them in a safe deposit box with John having joint access on the advice of legal counsel in order to minimize problems of the administration of their estate. Dr. Donahue's federal income tax returns disclosed that gifts of the St. Joseph School District bonds had been made to John, but that the bonds which John's mother removed and placed in a box in her own name had not been given to him.

On the other hand, there is testimony support-
ing the trial court's finding. The box from which
the bonds were removed was in the name of John
alone. It was John who collected the interest and
reported it on his tax returns. Plaintiff testified
that in late 1969 or early 1970 she was present at
a conversation between John and his mother, at
which time the mother said they were giving
bonds to John to equalize a gift of farm land made
to another son and John wouldn't have to pay
taxes on the bonds and the amount would be
comparable to a gift made to another son.

The gift tax returns filed by the senior Dona-
hues for 1970 showed that they indeed gave John's
brother and his wife a gift of farm property having
a value then of $105,000. John and his mother
deny that any conversation regarding such gifts
took place.

Given the sharp conflict in testimony, we cannot
say that the trial judge abused his discretion or
made findings of fact totally unsupported by the
record. The trial judge observes the witnesses and
is the best judge of their credibility. *Eglash v
Detroit Institute of Technology,* 375 Mich 592, 595;
134 NW2d 710 (1965). The transcript is replete
with instances where John and his parents were
untruthful. The senior Donahues made gifts to
John in 1977, 1978, and 1979, and did not file gift
tax returns in an effort to conceal gifts to their
son. Other instances of the lack of credibility of
defendant and his parents have been referred to
earlier in this opinion.

Absent a showing of abuse of discretion or un-
less it is clear that the reviewing court would have
reached a different result had it occupied the
position of trial judge, this Court does not substi-
tute its judgment for that of the trial judge. *Mc-*

*Lain v McLain,* 108 Mich App 166; 310 NW2d 316 (1981); *York v York,* 113 Mich App 306; 317 NW2d 604 (1982). Where the trier of fact finds a witness has testified falsely, it may disregard all of the witness's testimony or believe such parts as are corroborated by other testimony, *Hillman v Schwenk,* 68 Mich 293; 36 NW 77 (1888). Given the conflicting testimony in this case and the lack of credibility on material issues with respect to some of defendant's witnesses, we are not persuaded that the trial court abused its discretion or that we would have found differently had we occupied the position of the trial judge.

Affirmed. Costs to plaintiff.