*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMNA MAHMOOD,

        Plaintiff/Counterdefendant-Appellee,

v

IRFAN MAHMOOD,

        Defendant/Counterplaintiff-Appellant,

and

ASMAT MIRZA,

        Third-Party Defendant.

UNPUBLISHED
November 15, 2024
9:20 AM

No. 366683
Macomb Circuit Court
LC No. 2021-009917-DO

Before: JANSEN, P.J., and RICK and PATEL, JJ.

PER CURIAM.

Defendant/counterplaintiff, Irfan Mahmood, appeals as of right the June 14, 2023 judgment of divorce, which granted plaintiff/counterdefendant, Amna Mahmood, spousal support and attorney fees. The judgment also reflected the trial court's ruling concerning division of the parties' assets. We affirm.

## I. FACTUAL BACKGROUND

In December 1997, the parties married. Two children were born to the parties during the marriage. Both children were adults at all relevant times during the proceedings below. The family lived in a home in Sterling Heights, Michigan, which was purchased before the marriage. A second property in Bloomfield Hills, Michigan, was also purchased during the marriage. Plaintiff did not work outside the home for a majority of the marriage. She was primarily responsible for caring for the home, defendant, and the children. On the other hand, defendant worked in the healthcare field and earned a healthy income during the marriage. Defendant also earned millions of dollars in settlements from several lawsuits unrelated to this divorce action, which he received during the marriage.

In 2010, plaintiff suspected defendant was engaged in an extramarital affair with third-party defendant, Asmat Mirza. Mirza ultimately moved to Kissimmee, Florida, and purchased a gas station business. In 2017, the parties' marriage began to deteriorate because defendant regularly traveled to Florida. According to plaintiff, defendant began to financially abandon her despite consistently providing for her in the past. In 2019, plaintiff found employment outside the home. The parties' relationship continued to deteriorate. In August 2021, defendant was arrested for domestic violence against plaintiff. Plaintiff subsequently obtained a personal protection order (PPO) against defendant.

In September 2021, plaintiff filed for divorce. Defendant answered the complaint and filed a counterclaim. Discovery commenced. During discovery, plaintiff learned defendant transferred the Bloomfield Hills property to Mirza in July 2021. It was also discovered that in 2021, defendant obtained settlement proceeds in relation to a previously filed qui tam lawsuit. Defendant gave $619,650 of those funds to Mirza. Plaintiff filed a third-party complaint, but did not serve Mirza before trial.

A bench trial was held over two days in February and March 2023. Evidence was presented concerning the parties' assets and defendant's income. Plaintiff testified about the parties' marriage, how much she earned, her monthly expenses, and her debt. Defendant testified that he had not worked since 2016 or 2017. Defendant asserted that he was unable to pay spousal support. He admitted that he gave Mirza a portion of the settlement funds because he had personally guaranteed several loans in relation to the gas station, which was closed at the time of trial because of contamination issues. Defendant likewise reported that he conveyed the Bloomfield Hills property to Mirza so she could prove her ability to pay certain costs to the Florida Department of Environmental Protection (FDEP). Mirza testified about the assistance that defendant provided in relation to the gas station. Defendant and Mirza denied that defendant held an ownership interest in the gas station. They also denied that they had an affair or that they intended to deprive plaintiff of marital assets.

In a written opinion and order issued in May 2023, the trial court awarded plaintiff the entire interest in the Sterling Heights property, which was valued at $488,300. Although the trial court acknowledged that at least a portion of the property was separate property belonging to defendant, the trial court found it was necessary to invade the asset because defendant dissipated plaintiff's $309,825 share in the qui tam settlement by transferring $619,650 to Mirza. Plaintiff was awarded an $837,250 interest in the Bloomfield Hills property, which was valued at $1,674,500. Defendant was awarded the remaining interest. The trial court held that certain tax debt was defendant's sole liability. After imputing income to defendant in the amount of $150,000 per year, the trial court awarded plaintiff $1,500 in monthly spousal support. The trial court also awarded attorney fees to plaintiff under MCR 3.206(D)(2)(a), but did not calculate a specific amount. Rather, it ordered plaintiff to submit documentation so that the amount could be determined at a later date. On June 14, 2023, the trial court entered a judgment of divorce. This appeal followed.

II. ANALYSIS

A. DIVISION OF PROPERTY

Defendant lodges multiple challenges to the trial court's decision concerning the division of property. We conclude that none of his arguments have merit.

The standard of review applicable to divorce actions was set forth by this Court in *Welling v Welling*, 233 Mich App 708, 709; 592 NW2d 822 (1999):

> In a divorce case, this Court must first review the trial court's findings of fact regarding the valuations of particular marital assets under the clearly erroneous standard. A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made. This Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses. If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts. The dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable. [Quotation marks and citation omitted.]

With regard to the distribution of marital assets, the goal "in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Gates v Gates*, 256 Mich App 420, 423; 664 NW2d 231 (2003). "A division of property in a divorce action need not be equal, but it must be equitable." *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994). When dividing property,

> the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992) (citation omitted).]

"The trial court must consider all relevant factors but not assign disproportionate weight to any one circumstance." *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008) (quotation marks and citation omitted). "While each spouse need not receive a mathematically equal share, any significant departures from congruence must be explained clearly by the court." *Welling*, 233 Mich App at 710. "[T]here is no Michigan statute or caselaw that precludes outright a substantial deviation from numerical equality in a property distribution award." *Washington v Washington*, 283 Mich App 667, 673; 770 NW2d 908 (2009).

In reaching an equitable division, the trial court must first determine what property is considered marital property and what property is considered separate property. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). In *Cunningham*, this Court explained:

Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage. Once a court has determined what property is marital, the whole of which constitutes the marital estate, only then may it apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances. As a general principle, when the marital estate is divided each party takes away from the marriage that party's own separate estate with no invasion by the other party.

The categorization of property as marital or separate, however, is not always easily achieved. While income earned by one spouse during the duration of the marriage is generally presumed to be marital property, there are occasions when property earned or acquired during the marriage may be deemed separate property. For example, an inheritance received by one spouse during the marriage and kept separate from marital property is separate property. Similarly, proceeds received by one spouse in a personal injury lawsuit meant to compensate for pain and suffering, as opposed to lost wages, are generally considered separate property. Moreover, separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property. The mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital. [*Id*. at 201-202 (quotation marks and citations omitted).]

## 1. THE BLOOMFIELD HILLS PROPERTY

Defendant first challenges the trial court's treatment of the Bloomfield Hills property. The trial court concluded that it was marital property because it was purchased during the marriage. The trial court found the Bloomfield Hills property had appreciated in value to $1,674,500, and further calculated that plaintiff's interest in the property was valued at $837,250. We recognize that the deed reflected that defendant was the sole owner of the property. Nevertheless, "[t]he mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital." *Id*. at 201-202. According to plaintiff, the parties intended to live in the Bloomfield Hills property when they grew older, and they used it for entertaining before their separation. Defendant does not provide any argument on appeal to support that the Bloomfield Hills property should have been considered separate property. Given that the property was purchased during the marriage, we see no error in the court's conclusion that it was marital property, and that plaintiff was entitled to an equitable distribution of the property. See *Cunningham*, 289 Mich App at 201.

In the court below, the proper division of the Bloomfield Hills property was complicated by the fact that defendant transferred it to Mirza in exchange for $1 before the divorce proceedings commenced, meaning that it was not part of the marital estate at the time of trial. In support of its decision to recapture the property, the trial court cited *Thames v Thames*, 191 Mich App 299, 301; 477 NW2d 496 (1991); *Woodington v Shokoohi*, 288 Mich App 352, 368; 792 NW2d 63 (2010); and *Cassidy v Cassidy*, 318 Mich App 463, 499-500; 899 NW2d 65 (2017), which address the dissipation of the marital estate via transfers made to deprive the other party of assets, transfers

made to one party's mistress, and fraudulent transfers of property, generally.[1] The trial court then stated:

> [Defendant] contends this Court cannot adjudicate Ms. Mirza's rights to the Bloomfield Hills home unless a conspiracy is established. As a general principle, a family law court has no authority to adjudicate the rights of third parties in divorce actions. An exception to the general rule exists where a third party has conspired with one spouse to deprive the other spouse of an interest in the marital estate. A court has the authority to find that assets were fraudulently transferred to a third party to deprive a spouse of an interest in marital property.

> This Court finds that a fraudulent transfer occurred here. Significantly, Ms. Mirza knew that [defendant] was married when she accepted the deed wherein he was identified as a single individual. She accepted the deed, which indicated fraudulently stated [sic] that [defendant] was a single man, and she recorded it. She received it in July 2021 and recorded it in April 2022. . . . Her actions demonstrate that, at the time she recorded it, she knew she was recording a fraudulent document that gave her [plaintiff's] interest in the house. . . .

> Additionally, [defendant's] actions evidence further conduct intended to conceal this transfer. He initially denied making the transfer in his interrogatory responses and omitted his marriage status from the transferred deed. This is exactly like the cases where a spouse has used marital assets to benefit a third-party, to the detriment of the other spouse. Whether or not Ms. Mirza is, in fact, [defendant's] mistress is not controlling under this analysis. What is controlling, from the Court's perspective, is Ms. Mirza's knowledge that [defendant] was a married man when she accepted and recorded the deed stating he was a single man. Ms. Mirza knew that [plaintiff] had an interest in the property Ms. Mirza was accepting as her own. She was arguably a participant in other aspects of fraud because she acknowledged her credit was poor and they intended to bolster her ability to get loans by making the house available to her creditors as collateral. Even though she did not really own the home and [defendant] lacked the authority to transfer [plaintiff's] interest in the home to her.

> From the Court's perspective, a party cannot just feign ignorance in an attempt to contravene a finding of fraud. [Defendant] kept the dealings regarding the transfer of this home from [plaintiff], and he transferred [plaintiff's] interest to Ms. Mirza without [plaintiff's] knowledge or consent. Ms. Mirza accepted and recorded a fraudulent deed. If [plaintiff] had known about the transfer, she could have stopped it and would still possess her financial interest.

---

[1] Defendant spends a significant amount of time on appeal discussing the Uniform Fraudulent Transfer Act (UFTA), MCL 566.42 *et seq*. The trial court did not rely on the UFTA. "We need not address an issue that was not the basis of the trial court's decision." *Aguirre v Dep't of Corrections*, 307 Mich App 315, 326; 859 NW2d 267 (2014).

In the Court's opinion, Ms. Mirza's acceptance and recording of the deed from [defendant] as a single man, when she knew he was married, is circumstantial evidence of a conspiracy. The Court does not believe direct evidence or an admission of the existence of a conspiracy is required to make this finding.

In a divorce action, "when a party has dissipated marital assets without the fault of the other spouse, the value of the dissipated assets may be included in the marital estate." *Woodington*, 288 Mich App at 368. Fraudulent transfers to third parties can form the basis for recapturing an asset as part of the marital estate, particularly if the transfer was made in an effort to deprive the other spouse of an interest in marital property. *Thames*, 191 Mich App at 302. However, as noted by defendant, the issue is complicated by jurisdictional issues. Indeed,

[a]bsent allegations of fraud, the trial court in a divorce action may only adjudicate the rights of the spouses whose marriage is being dissolved. Thus, the trial court's jurisdiction is limited to the dissolution of the marriage, and to matters ancillary to the marriage's dissolution, such as child support, spousal support, an equitable division of marital assets, and the award to one spouse of the other spouse's property in certain circumstances. So, in a divorce action, the trial court lacks the authority to compel a party to convey property or a property interest to a third person, even a child of the parties, or to adjudicate claims of third parties. [*Reed v Reed*, 265 Mich App 131, 157-158; 693 NW2d 825 (2005) (quotation marks and citations omitted).]

As explained in *Thames*, 191 Mich App at 301-302, an exception to this general rule exists. In *Thames*, the husband established an irrevocable trust, which included stock and a life-insurance policy, for the benefit of the parties' child. *Id*. at 301. Although the husband claimed he set up the trust without knowing the wife would file for divorce in the near future, the trial court concluded that the husband established the trust to place the particular assets beyond the wife's reach. *Id*. The trial court ordered the husband "to deliver to [the wife] the assets of [the] irrevocable trust established for the benefit of the parties' minor child." *Id*. On appeal, this Court affirmed, reasoning:

A divorce case is equitable in nature, and a court of equity molds its relief according to the character of the case. Once the court acquires jurisdiction, it will do what is necessary to accord complete equity and to conclude the controversy. Generally, a court has no authority to adjudicate the rights of third parties in divorce actions. An exception to the general rule exists when it is claimed that a third party has conspired with one spouse to deprive the other spouse of an interest in the marital estate. The court, therefore, has authority to find that assets were fraudulently transferred to a third party to deprive a spouse of an interest in marital property. It follows that another exception exists for situations like the one before us. One spouse cannot deprive the other of an interest in the marital estate by transferring marital property into a trust for the benefit of a third party. [*Id*. at 302 (citations omitted).]

Perhaps more relevant to this appeal is *Donahue v Donahue*, 134 Mich App 696, 699-700; 352 NW2d 705 (1984).[2] There, the husband and his parents attempted to conceal the nature and value of the marital estate from the wife. The husband argued it was beyond the power of the trial court to adjudicate the rights of third parties, i.e., his parents, in the divorce action. *Id*. at 704. At issue were a certificate of deposit and bearer bonds, which had a value of almost $200,000 and were allegedly given to the husband by his father. *Id*. at 702, 705-707. Since the proofs clearly showed that both the husband and his parents were concealing assets from the wife, this Court held that the trial court was within its jurisdiction and right to determine whether the husband or his parents were the owners of the certificate of deposit and bearer bonds. *Id*. at 705. The *Donahue* Court also noted that, although the husband's parents were not made parties to the divorce action, they were represented by counsel at trial, they testified at length, and they were cross-examined. *Id*.

Likewise, in *Wiand v Wiand*, 178 Mich App 137, 146; 443 NW2d 464 (1989), the husband alleged that the trial court erred by including assets in the marital estate that belonged to his brother. This Court began its analysis by stating, "[e]ven assuming that [the husband's] brother's rights were affected by this judgment of divorce," there is "an exception to the rule that a court cannot affect the rights of nonparties . . . when it is claimed that a third party has conspired with one spouse to deprive the other of his or her rightful interest in the marital estate." *Id*.

In this case, like in *Donahue* and *Wiand*, the evidence showed that defendant and Mirza conspired to deprive plaintiff of her interest in marital property. Defendant transferred the Bloomfield Hills property, which was worth more than $1.5 million, to Mirza for $1. The quitclaim deed executed by defendant reflected that he was a "single individual[.]" When the quitclaim deed was signed, defendant was still married to plaintiff. They purchased the Bloomfield Hills property during the marriage and used it to entertain guests before their separation. Moreover, Mirza knew defendant was married and that plaintiff believed she and defendant were engaging in an affair. She nevertheless accepted the deed to the property, and recorded the deed in April 2022, while the divorce proceedings were ongoing. While defendant and Mirza testified that defendant conveyed the Bloomfield Hills property to her in an effort to help pay for the gas station's debts, rather than to deprive plaintiff of the asset, the trial court did not find their testimony credible.

Given these facts, the trial court was within its jurisdiction and right to determine whether plaintiff held an interest in the Bloomfield Hills property, irrespective of the fact that the deed named Mirza as sole owner of the property. Although Mirza was not technically made a party to the divorce action because she was not served with the third-party complaint, like the parents in *Donahue*, Mirza testified at length and was cross-examined at trial. Further, while Mirza was not represented by counsel, like the brother in *Wiand*, Mirza knew of the divorce proceedings well in advance of trial. There is no indication that Mirza was unaware of plaintiff's allegation that the Bloomfield Hills property was conveyed to Mirza in an attempt to remove the asset from the

---

[2] "Although cases decided before November 1, 1990 are not binding precedent, they nevertheless can be considered persuasive authority[.]" *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citations omitted).

marital estate.  We find no error in the trial court's determination the Bloomfield Hills property belonged within the marital estate.  Importantly, a "trial court need not ignore reality when [a party] obfuscates his [or her] various property holdings. . . ." *Reed*, 265 Mich App at 158.

To support its decision concerning the Bloomfield Hills property, the trial court also cited *Cassidy*, 318 Mich App at 493, which states: "When fraud is alleged, third parties can be joined in the divorce action only if they have conspired with one spouse to defraud the other spouse of a property interest."  (Footnote, quotation marks and citation omitted.)  The *Cassidy* Court, in considering whether the husband's mistress "was properly brought into the case," *id*. at 494, noted the elements of fraud, *id*. at 498-499.  *Cassidy* does not directly apply in this case, however.  Indeed, unlike the husband's mistress in *Cassidy*, Mirza was not joined as a third-party defendant.  While a third-party complaint was filed, Mirza was not served with a summons or the third-party complaint.  However, for the reasons discussed above, the trial court had jurisdiction to determine whether plaintiff held an interest in the Bloomfield Hills property, regardless of the fact the deed named Mirza as sole owner of the property.  As recognized in *Cassidy*, "the trial court has the inherent authority to craft an outcome to create the equitable division of assets even if that outcome touches upon a third party."  *Id*. at 497.[3]

## 2. THE STERLING HEIGHTS PROPERTY

Defendant next challenges the trial court's decision concerning the Sterling Heights property, arguing that it was a separate property that should not have been distributed to plaintiff.  As earlier noted, "[g]enerally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham*, 289 Mich App at 201.  However, "[w]hen one significantly assists in the acquisition or growth of a spouse's separate asset, the court may consider the contribution as having a distinct value deserving of compensation." *Reeves v Reeves*, 226 Mich App 490, 495; 575 NW2d 1 (1997).

The trial court acknowledged that defendant purchased the Sterling Heights property for $244,000 in the days before the parties' marriage.  Defendant never transferred an interest in the property to plaintiff.  The trial court found the undisputed value of the Sterling Heights property was $448,300, and noted that the property was not encumbered by a mortgage.  The trial court held that $244,000 was defendant's separate property.  Although the trial court opined that the equity in the home could be considered marital property subject to equitable division, it did not rule on this issue.  Instead, the court found that defendant dissipated marital assets by transferring $619,650, which was a portion of the qui tam settlement proceeds, to Mirza.  The trial court

---

[3] Defendant does not directly challenge the trial court's decision to order Mirza to deed the Bloomfield Hills property back to him.  Nor can defendant assert Mirza's rights.  See *Fieger v Comm'r of Ins*, 174 Mich App 467, 471, 437 NW2d 271 (1988) ("A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.").  In so indicating, we are in no way commenting on whether the trial court properly exercised jurisdiction over Mirza, who appeared at the trial and testified about the subject matter of the case, including whether she would transfer the Bloomfield Hills property back to defendant.

-8-

awarded the Sterling Heights property to plaintiff to account for the dissipation of the $619,650, of which plaintiff was entitled to $309,825.

Citing MCL 552.23(1), the trial court concluded that it was necessary to award plaintiff the Sterling Heights property even though it was a separate asset because "the estate and effects" were "insufficient for the suitable support and maintenance" of plaintiff, who had demonstrated additional need and was not at fault for the divorce. Defendant argues that this ruling was made in error.

"Generally, marital assets are subject to division between the parties, but the parties' separate assets may not be invaded." *McNamara v Horner*, 249 Mich App 177, 183; 642 NW2d 385 (2002). "However, a spouse's separate estate can be opened for redistribution when one of two statutorily created exceptions is met." *Reeves*, 226 Mich App at 494. As relevant to this appeal,

> [t]he first exception to the doctrine of noninvasion of separate estates is found at MCL 552.23. . . . Subsection 1 of this statute permits invasion of the separate estates if after division of the marital assets "the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party. . . ." As interpreted by our courts, this means that invasion is allowed when one party demonstrates additional need. [*Id.* at 494 (citation omitted; third alteration in original).]

The trial court did not clearly err by determining that plaintiff demonstrated sufficient need to invade the separate asset under MCL 552.23(1). At the time of trial, plaintiff worked full-time at Huntington Bank, earning $21 an hour, and also worked periodically as a Door Dash driver. Plaintiff had not yet filed her 2022 tax returns at the time of trial. However, she presented her 2020 and 2021 tax returns, which reflected that she earned about $40,000 in income for those tax years. Plaintiff testified in detail about her expenses and debts, which exceeded her income. Plaintiff denied that she was able to support herself on her income alone and did not believe she would be promoted at Huntington Bank in the near future. Plaintiff then testified that the "ideal income for [her] to live comfortably," was between $5,000 to $6,000 each month. Before plaintiff sought a divorce, defendant either gave her money to pay the bills, or paid the bills himself.

During cross-examination, plaintiff agreed that some of the figures she provided concerning her monthly bills were estimates. However, the trial court clearly found at least some of plaintiff's testimony to be credible. The trial court awarded plaintiff spousal support in the amount of $1,500 per month, which increased her monthly income. Considering the clear and specific testimony supporting plaintiff's assertions that her needs exceeded her assets and monthly income, the trial court did not err by invading the separate asset under MCL 552.23(1) for plaintiff's support and maintenance. Indeed, it was necessary and equitable for the trial court to invade the asset to cover an anticipated shortfall, i.e., $309,825, given the lack of assets in the marital estate because of defendant's conduct.

With respect to the trial court's finding that defendant dissipated the $309,825, this Court has observed that "when a party has dissipated marital assets without the fault of the other spouse, the value of the dissipated assets may be included in the marital estate." *Woodington*, 288 Mich

App at 368. It is undisputed that defendant endorsed a $619,650 check, which was issued in relation to the qui tam settlement, to Mirza while the divorce proceedings were pending. Plaintiff was unaware of this until the divorce proceedings were well underway. While defendant alleged that the money was used to pay loans, the trial court rejected this claim. Given the evidence presented and the credibility determinations, the trial court did not clearly err by concluding that defendant dissipated marital assets.[4]

### 3. EQUITABLE DISTRIBUTION OF PROPERTY

Defendant next argues that the property division was inequitable because it weighed heavily in plaintiff's favor. We disagree.

As already stated, "[t]he goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Gates*, 256 Mich App at 423. "While each spouse need not receive a mathematically equal share, any significant departures from congruence must be explained clearly by the court." *Welling*, 233 Mich App at 710. When dividing property,

> the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Sparks*, 440 Mich at 159-160 (citation omitted).]

"The trial court must consider all relevant factors but not assign disproportionate weight to any one circumstance." *Berger*, 277 Mich App at 717. "A party's attempt to conceal assets is a relevant consideration, but it is only one of many facts that the court must weigh. Further, a judge's role is to achieve equity, not to 'punish' one of the parties." *Sands v Sands*, 442 Mich 30, 36; 497 NW2d 493 (1993). The fact-finder is best suited to consider a witness's credibility and demeanor,

---

[4] Defendant also argues that the trial court improperly concluded that the qui tam settlement proceeds were marital property. He instead claims that those funds belonged to the United States government. Defendant also argues that the trial court failed to consider the tax implications related to selling the Bloomfield Hills property. However, these arguments were not raised in or decided by the trial court, and thus, they are waived. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 3. While we may overlook preservation requirements under certain circumstances, we decline to do so here. *Id*. at ___; slip op at 3. See also *Kidder v Pobursky-Kidder*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365527); slip op at 8 n 3 ("[o]ur Supreme Court has cautioned that [the] discretion [to consider unpreserved issues] should be exercised sparingly and only in exceptional circumstances").

and "an appellate court should not conduct an independent review of credibility determinations." *Smith v Anonymous Joint Enterprise*, 487 Mich 102, 113, 130; 793 NW2d 533 (2010).

The trial court made detailed findings of fact to support its determination that a division of the marital property slightly favoring plaintiff was warranted. The trial court found that both parties contributed to the marital estate during the marriage. Defendant contributed financially, while plaintiff cared for the home, defendant, and the children. At the time of the divorce, both parties were able to work. The trial court noted plaintiff's allegations that defendant and Mirza engaged in a long-term affair, which resulted in a breakdown of the marriage, but the trial court did not treat this as a significant factor in the distribution of assets. Instead, the trial court emphasized defendant's lack of credibility regarding his assets and income, as well as his obstructionist behavior, which included conspiring with Mirza to deprive plaintiff of marital assets.

As it relates to the trial court's factual findings, defendant maintains that he did not transfer property or funds to Mirza "in bad faith" and instead made "a bad business decision." According to defendant, the trial court ignored his and Mirza's testimony regarding "their plans of filing a lawsuit against the [F]DEP to avoid closure of the gas station." However, there is no indication in the record that the trial court ignored evidence; rather, the trial court considered defendant's and Mirza's testimony and found it was not credible.

Defendant also argues the trial court afforded too much weight to his alleged misconduct related to the parties' assets. "Marital misconduct is only one factor among many and should not be dispositive. Instead, fault should be considered in conjunction with all the other relevant factors." *Cassidy*, 318 Mich App at 478 (quotation marks and citations omitted). Importantly, fault "is not a punitive basis for an inequitable division." *Id*. (quotation marks and citation omitted). Although misconduct related to assets does not require automatic forfeiture of those assets, attempts to conceal assets, or behavior that results in unnecessary litigation, can be considered when dividing assets and can support a deviation from an equal split. *Draggoo v Draggoo*, 223 Mich App 415, 430; 566 NW2d 642 (1997).

In this case, the trial court did not give undue weight to defendant's fault. As found by the trial court, defendant transferred more than $2 million of marital assets to Mirza. The transfer of the Bloomfield Hills property occurred in the months before plaintiff filed for divorce, and defendant also transferred $619,650 to Mirza during the divorce proceedings. The trial court properly focused on defendant's "conduct involving a concerted attempt to conceal marital assets both during and after the parties' separation." *Cassidy*, 318 Mich App at 478. The trial court did not err by considering defendant's misconduct a significant factor, and it did not place inappropriate weight on defendant's fault. Indeed, fault is particularly relevant "in a case like this where . . . the fault was directly related to the parties' assets[.]" *Washington*, 283 Mich App at 676.

Moreover, although defendant's misconduct was a significant factor, the trial court did not merely focus on defendant's poor behavior in relation to the marital assets. The trial court also considered a number of other factors, including the parties' disparate earning abilities, their respective ages and ability to work, and their overall contributions to the marital estate. The trial court took great pains to equitably distribute the marital estate. Considering the trial court's analysis as a whole, the division of assets was fair and equitable on the facts of this case.

## B. SPOUSAL SUPPORT

Defendant next argues the trial court abused its discretion by imputing income to defendant and awarding plaintiff spousal support. We disagree.

We review a trial court's award of spousal support for an abuse of discretion. *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012).

> We also review for an abuse of discretion a trial court's decision whether to impute income to a party. An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case. We review for clear error the trial court's factual findings regarding spousal support. A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made. If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case. We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable. [*Id*. at 25-26 (quotation marks and citations omitted).]

"A trial court has discretion to award spousal support under MCL 552.23." *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010). "Spousal support does not follow a strict formula. Indeed, . . . there is no room for the application of any rigid and arbitrary formulas when determining the appropriate amount of spousal support. . . ." *Loutts*, 298 Mich App at 30 (quotation marks and citation omitted; second alteration in original).

> Among the factors that a court should consider are (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Woodington*, 288 Mich App at 356.]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Loutts*, 298 Mich App at 32 (quotation marks and citation omitted). "The objective of spousal support is to balance the incomes and needs of the parties in a way that will not impoverish either party, and support is to be based on what is just and reasonable under the circumstances of the case." *Woodington*, 288 Mich App at 356. Relevant here is this Courts pronouncement that "[i]f a court finds that a party has voluntarily reduced the party's income, the court may impute additional income in order to arrive at an appropriate alimony award." *Cassidy*, 318 Mich App at 475 (alteration, quotation marks, and citations omitted).

-12-

When reviewing spousal support awards, this Court's first task is to determine whether the trial court's factual findings supporting spousal support were clearly erroneous. *Loutts*, 298 Mich App at 26. "If the trial court's findings are not clearly erroneous, [this Court] must determine whether the dispositional ruling was fair and equitable under the circumstances of the case." *Id*. The fact-finder is best suited to consider a witness's credibility and demeanor, and "an appellate court should not conduct an independent review of credibility determinations." *Smith*, 487 Mich at 130. See also *Berger*, 277 Mich App at 705 (holding "[t]his Court will defer to the trial court's credibility determinations").

In this case, the trial court found that plaintiff has some health issues, but is able to work. Plaintiff, who did not work outside the home until 2019, has a high school diploma. At the time of trial, she worked full-time at Huntington Bank and had recently been promoted. She earned $21 per hour. She also periodically worked as a Door Dash driver. The trial court concluded that plaintiff's yearly income was about $40,000. This was supported by plaintiff's testimony and tax records. Plaintiff testified at trial about her monthly bills and debts, which far exceeded her income. She denied that she was able to support herself on her income alone and did not believe she would be promoted at Huntington Bank in the near future.

The trial court imputed $150,000 in yearly income to defendant. The trial court found that defendant was capable of earning this amount, noting his "knowledge and experience in the health care industry," which dated back to 1988. This finding was also supported by defendant's and Mirza's testimony, which indicated that defendant was well known and respected in that industry. Additionally, defendant sold a healthcare company, which he developed and operated, for $1.7 million during the marriage. Defendant worked as a consultant in the healthcare field for years before the divorce proceedings, and reported in excess of $300,000 in income for the 2016 and 2017 tax years.

Although defendant testified that he had been unemployed since 2016 or 2017 and lived off the proceeds from lawsuit settlements, the trial court found that he had the ability to pay spousal support, "given his experience and education." The trial court additionally found that defendant was capable of traveling to Florida and assisting Mirza, and that he dissipated more than $2 million in marital assets, "which is contrary to the reasonable actions of any person who claims an inability to earn money."

Defendant complains on appeal that he is unable to pay spousal support because he is unemployed and has not been able to obtain employment. He also claims that the funds he received from the lawsuits have been spent. Defendant testified as much at trial, but the trial court found his testimony was not credible. It appears, however, that the trial court gave some weight to defendant's age, his apparent absence from the healthcare industry, and his testimony that it may be difficult for him to work in the healthcare industry because he has been convicted of domestic violence. Consequently, the trial court only imputed $150,000 in yearly income to defendant, despite evidence that he earned far more than that in the previous years, even when not considering the lawsuit settlement proceeds. When imputing income, the trial court properly averaged defendant's income to the best of its ability to ascertain his earnings in the years he worked. The trial court also considered defendant's ability to pay given his circumstances. The court likewise considered defendant's tax debt, which it ruled was separate property. On this record, we discern no error.

-13-

The trial court awarded plaintiff $1,500 a month in spousal support after considering the length of the parties' marriage, the parties' ages, and the parties' ability to earn. The trial court also considered "the parties' prior standard of living and whether either is responsible for the support of others . . . ." *Woodington*, 288 Mich App at 356. It found that defendant supported plaintiff, the children, his mother, and his sister during the marriage. The trial court considered that plaintiff had been a stay-at-home mother for a majority of the lengthy marriage, that plaintiff was the children's primary caregiver when they were minors, and that defendant controlled the finances. The trial court also considered plaintiff's need and the amount of property, including the Sterling Heights property, already awarded to plaintiff. It concluded that the awarded property was insufficient to meet plaintiff's needs, noting that she would be required to pay property taxes on the Sterling Heights property and had additional monthly expenses. This consideration was proper because plaintiff should not be required to dissipate the property award to support herself. See *Hanaway v Hanaway*, 208 Mich App 278, 296; 527 NW2d 792 (1995) (stating that although property awards may be considered when determining spousal support, one party should not be required to dissipate a property award to support himself or herself).

The trial court also found that "the parties lived and spent lavishly over the years." While the trial court did "not presume that level of lavish spending [could] continue," it noted that there was "a certain level of living" to which plaintiff became "accustomed [] and that would likely have continued, but for the divorce and dissipation of assets by [defendant]." The trial court's finding on this point is supported by the record, particularly by plaintiff's testimony. The parties' previous standard of living is a relevant consideration. See *Demman v Demman*, 195 Mich App 109, 111-112; 489 NW2d 161 (1992). Importantly, however, the trial court's ruling indicates that it did not award an amount of spousal support which would permit plaintiff to continue living at the same standard she enjoyed for a majority of the marriage. The trial court's finding was largely based on need.

While defendant denies the existence of certain valuable assets, the trial court found that defendant "dissipated the marital estate and the money that [plaintiff] would otherwise have at her disposal upon resolution of this divorce." These factual findings were not clearly erroneous, as we have already discussed *supra*. While defendant argued that his actions in dissipating marital assets were merely bad business decisions, not an attempt to deprive plaintiff of marital property, the trial court found this testimony was not credible. Notably, defendant also sought to keep the Sterling Heights property for himself and requested that the trial court hold plaintiff partially liable for the significant tax debt he accumulated over the course of their marriage. As a result, the trial court awarded plaintiff a portion of the dissipated assets, which it found did not fully satisfy her needs.

A trial court may also consider general principles of equity in determining whether to award spousal support and the amount of such an award. See *Woodington*, 288 Mich App at 356. Indeed, "[s]pousal support is to be based on what is just and reasonable under the circumstances of the case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003). When considering the equities in requiring defendant to pay $1,500 in monthly spousal support, the trial court stated:

> [T]here are other factors relevant to this case that deserve consideration regarding the appropriateness of an award of spousal support including 1) whether [defendant] has effectively eliminated any possibility for using the Bloomfield Hills

property to obtain a loan to restore some of the transferred marital assets to [plaintiff]; 2) that other marital assets may have either been depleted or sufficiently hidden such that they cannot be discovered; 3) the additional litigation that may be required for [plaintiff] to obtain compliance with the Court's order regarding title of the Bloomfield Hills home, and 4) that [plaintiff] supported [defendant] during his years of developing and cultivating his career, but he seeks to now leave her with nothing.

\* \* \*

The Court finds that [plaintiff] needs spousal support to maintain a reasonable standard of living, and [defendant] has the ability to pay spousal support. Moreover, the dissipation of [plaintiff's] interest in the Bloomfield Hills home and in the lawsuit funds received during the pendency of the divorce proceedings require an equitable remedy.

It is inequitable for [defendant] to have: (1) given away the Bloomfield Hills home, particularly as he claims he is unable to be employed, (2) given away the lawsuit funds he received while the divorce was pending, and (3) asserted that [plaintiff] has no interest in the Sterling Heights home that she has contributed to over the years.

\* \* \*

Additionally, [defendant] has also literally given away over two million dollars of the family's assets in money and property over the past two years, which is contrary to the reasonable actions of any person who claims an inability to earn money.

Contrary to defendant's argument that the court improperly focused on fault, we find that fault was a relevant consideration here. See *Ewald v Ewald*, 292 Mich App 706, 723-724; 810 NW2d 396 (2011) (fault is a relevant factor, but "is but one of many factors for the court to consider"); *Demman*, 195 Mich App at 111 ("a party's fault in causing the divorce is a valid consideration in awarding alimony"). Indeed, plaintiff testified that she filed for divorce only after repeatedly asking defendant to end his extramarital affair and after defendant committed domestic violence against her. Additionally, evidence supports that defendant attempted to keep certain marital property by transferring it to Mirza. Despite their lengthy marriage, defendant sought to leave plaintiff with half of his tax debt and little else. Moreover, the trial court did not merely focus on defendant's poor behavior. The trial court also considered a number of other factors, including the parties' disparate earning abilities, their ages and ability to work, their previous standard of living, and their respective contributions to the marital estate.

In sum, the trial court made extensive findings of fact, none of which were clearly erroneous. Further, the trial court's award of spousal support was just and reasonable under the circumstances. Indeed, the trial court balanced the incomes and needs of the parties so that neither would be impoverished. See *Loutts*, 298 Mich App at 26. Defendant is not entitled to relief.

## C. ATTORNEY FEES

Defendant argues the trial court abused its discretion by holding plaintiff was entitled to attorney fees. We disagree.

We review a trial court's award of attorney fees in a divorce action for an abuse of discretion. *Richards v Richards*, 310 Mich App 683, 699, 874 NW2d 704 (2015).

> An abuse of discretion occurs when the result falls outside the range of principled outcomes. However, findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error. A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. [*Id*. at 699-700 (quotation marks and citations omitted).]

Relevant questions of law are reviewed de novo. *Reed*, 265 Mich App at 164.

Attorney fees are not recoverable as of right in divorce actions; but they are authorized by both statute, MCL 552.13, and court rule, MCR 3.206(D). *Reed*, 265 Mich App at 164. MCR 3.206(D) states, in relevant part:

> **(D) Attorney Fees and Expenses.**
>
> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:
>
> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

When considering whether plaintiff was entitled to attorney fees, the trial court relied on MCR 3.206(D)(2)(a).[5] MCR 3.206(D)(2)(a) has been interpreted to require an award of attorney fees "only as necessary to enable a party to prosecute or defend a suit." *Myland*, 290 Mich App at 702 (quotation marks and citation omitted). The trial court must consider whether the other party has the ability to pay or contribute to the requesting party's fees. *Id*. at 703. In this case, the trial court stated:

---

[5] Plaintiff makes arguments on appeal concerning MCR 3.206(D)(2)(b). However, this Court "need not address an issue that was not the basis of the trial court's decision." *Aguirre*, 307 Mich App at 326.

[Plaintiff] has alleged facts sufficient to show that she is unable to bear the expense of this action and that [defendant] is able to pay. If [defendant] had not dissipated or otherwise hid money that belonged to [plaintiff,] she would be able to pay her attorney fees. [Defendant] has dissipated marital assets and remained intentionally underemployed, while [plaintiff], who has no history of working outside the home, has obtained a job earning $40,000.00 per year.

The Court will grant [plaintiff's] request for attorney fees. The amount of specific fees awarded will be determined through an affidavit of fees with required information for the Court's consideration and/or an evidentiary hearing as the Court deems necessary.

The trial court's finding that plaintiff would be unable to defend her suit if she did not receive financial assistance was not clearly erroneous. Before 2019, plaintiff did not work outside the home. At the time of trial, plaintiff worked full-time, earning $21 an hour. She also sometimes worked as a Door Dash driver. Plaintiff's testimony and tax returns support that she earned about $40,000 for the 2020 and 2021 tax years, and owed more than $45,000 in attorney fees, including a $3,000 retainer fee. Plaintiff testified that her monthly bills and debts far exceeded her income. According to plaintiff, if she had to pay the attorney fees, she would have to use her awards from the divorce judgment.

Considering the clear and specific testimony supporting plaintiff's assertions that her needs exceeded her assets and monthly income, the trial court did not err by concluding that an award of attorney fees was necessary and equitable. Under the circumstances, plaintiff would have to invade the same spousal support assets she is relying on to live in order to pay her attorney fees. "[A] party may not be required to invade her assets to satisfy attorney fees when she is relying on the same assets for her support." *Myland*, 290 Mich App at 702 (quotation marks and citation omitted). Moreover, it is clear that plaintiff owes more in attorney fees than she makes in one year. See *id*. ("[A] party sufficiently demonstrates an inability to pay attorney fees when that party's yearly income is less than the amount owed in attorney fees.").

Additionally, the trial court did not improperly focus on Mirza, "a nonparty to the divorce case," contrary to defendant's argument on appeal. Rather, as required, the trial court considered defendant's specific financial situation and the equities. As already discussed, the trial court correctly imputed income to defendant, who claimed that he had not worked since 2016 or 2017, and who dissipated a significant amount of marital property. Although defendant alleged that he lacked income or any other means to support himself, the trial court found this testimony was not credible. The trial court did not clearly err by concluding that defendant has the ability to pay plaintiff's attorney fees. Its decision to award attorney fees was not an abuse of discretion.[6]

---

[6] Although plaintiff urges this Court to enter an award relating to the attorney fees she incurred at the time of trial and void the transfer for the Bloomfield Hills property to Mirza, these requests are improper. Indeed, this Court is an error correcting Court. *Apex Laboratories Int'l, Inc v Detroit (On Remand)*, 331 Mich App 1, 10; 951 NW2d 45 (2020). We likewise decline to consider

Affirmed.

/s/ Kathleen Jansen
/s/ Michelle M. Rick
/s/ Sima G. Patel

---

whether plaintiff is entitled to attorney fees in relation to this appeal because the issue of appellate attorney fees is not properly before us. See MCR 7.211(C)(8); *Bonkowski v Allstate Ins Co*, 281 Mich App 154, 182; 761 NW2d 784 (2008).