*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COLBY TAYLOR,

        Plaintiff-Appellee/Cross-Appellant,

v

KRISTYN TAYLOR,

        Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
March 10, 2026
9:45 AM

No. 374435
Grand Traverse Circuit Court
LC No. 2023-017417-DM

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's judgment of divorce dividing the parties' marital estate, specifically the disposition of the marital home located in Traverse City, Michigan. Plaintiff cross-appeals, challenging the trial court's determination of the extent of the marital interest in that property. We affirm.

## I. FACTUAL BACKGROUND

The parties married in June 2007. They remained married for approximately sixteen years. During the marriage, they initially lived in a home in Williamsburg, Michigan, which they sold in 2012. After the sale, the parties attempted to purchase a new residence but were unable to obtain conventional financing. With financing unavailable, plaintiff sought financial assistance from his parents to purchase a residence located on Coyote Crossing in Traverse City. Plaintiff ultimately managed to purchase the property for approximately $149,800. Plaintiff contributed a portion of the purchase price, and his parents contributed approximately $100,000. The deed listed plaintiff, along with his parents as joint tenants with rights of survivorship, as the owners of the home. The deed did not name defendant as an owner. Defendant did not attend the closing because she was pregnant at the time and experiencing serious medical complications. She testified that plaintiff represented that his parents were loaning them the money for the purchase and acting "as the bank." Plaintiff, by contrast, maintained that his parents were co-owners of the property and that the funds were not a loan.

The parties moved into the Coyote Crossing home and lived there continuously. During that time, they made monthly payments of approximately $500 to plaintiff's parents and also paid

-1-

them a lump sum of $20,000. Defendant believed these payments were made toward repayment of a loan. Conversely, plaintiff characterized the payments as rent. Specifically, plaintiff asserted that the Coyote Crossing property was an investment jointly owned by him and his parents. He further stated that defendant held no ownership interest beyond any marital appreciation attributable to his share. Defendant disputed that characterization, asserting that the parties treated the home as marital property throughout the marriage.

The Coyote Crossing property was later appraised at approximately $400,000, and the classification and division of the property became one of the central issues of a five-day bench trial. At trial, plaintiff testified that the parties were unable to secure a mortgage and that his parents wired funds to complete the purchase quickly because of defendant's pregnancy-related medical concerns. He testified that there was no discussion at the time as to whether the money constituted a loan. Plaintiff believed his ownership interest in the property was limited to a one-third share, with his parents owning the remaining two-thirds. In his view, defendant was entitled only to a portion of the appreciation attributable to his interest, not to any share of his parents' interest.

Defendant testified that she understood the funds from plaintiff's parents to be a loan and that plaintiff repeatedly told her his parents were acting "as the bank." She acknowledged that there were no written loan documents and that she did not personally negotiate the arrangement, but testified that she relied on defendant's representations and believed the home was the marital residence despite the title.

Plaintiff's father testified that he and plaintiff's mother intended to retain ownership of the property and did not view the funds they provided as a loan. He characterized the monthly payments as rent and testified that the ownership structure was intended to reflect that he and his wife owned the majority interest in the home. Plaintiff's mother testified that she did not attend the closing and did not review the closing documents. She stated that she knew she had contributed money toward the purchase but did not understand how her name later appeared on the deed. She also testified that there was no intent to exclude defendant from ownership and that the transaction occurred under urgent circumstances.

The trial court ultimately granted plaintiff's request for a divorce and rejected defendant's claim that plaintiff and his parents acted fraudulently to deprive her of a marital interest. The court concluded that plaintiff's parents collectively held a one-half ownership interest in the property, that plaintiff held the remaining one-half interest, and that only his interest was subject to division in the divorce. Based on the appraised value, the court awarded Kristyn $100,000 attributable to the Coyote Crossing property as part of the overall property division. The court thereafter entered a judgment of divorce reflecting the foregoing. This appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

In divorce actions, we review the trial court's findings of fact for clear error. *Reed v Reed*, 265 Mich App 131, 150; 693 NW2d 825 (2005). "The trial court's factual findings will not be reversed unless they are clearly erroneous, i.e., if this Court is left with the definite and firm

conviction that a mistake has been made." *Id*. "Special deference is given to the trial court's findings when they are based on the credibility of the witnesses." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). If the trial court's factual findings are upheld, we then review the dispositional ruling to determine "whether the dispositive ruling was fair and equitable in light of those facts." *Id*. Dispositional rulings are reviewed for an abuse of discretion and will be affirmed unless we are left with a firm conviction that the result was inequitable. *Reed*, 265 Mich App at 150. Questions of law, including the interpretation of deeds and the classification of property interests, are reviewed de novo. *Beason v Beason*, 435 Mich 791, 804-805; 460 NW2d 207 (1990).

## B. DEFENDANT'S DIRECT APPEAL

## 1. NONMARITAL OWNERSHIP INTEREST

Defendant first argues that the trial court erred by determining that plaintiff's parents held a valid ownership interest in the Coyote Crossing residence. We disagree.

Defendant contends that the evidence established that the parents' contribution was a loan and that plaintiff misrepresented the nature of the transaction. The trial court's determination on this point rested primarily on credibility assessments. The court expressly found that the testimony of William and Jane Taylor was not "untruthful or deceptive" and that there was no evidence that plaintiff and his parents engaged in a scheme to defraud defendant or conceal marital assets. The court additionally found that the absence of any loan documentation, combined with the structure of the deed and the testimony regarding the purpose of the monthly payments, supported the conclusion that the parents' contribution was an ownership investment, rather than a loan.

This Court gives substantial deference to such credibility determinations because the trial court is in the best position to observe witnesses and assess their demeanor. *Cassidy v Cassidy*, 318 Mich App 463, 476-477; 899 NW2d 65 (2017); *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014). Defendant's appellate arguments largely invite this Court to reweigh conflicting testimony and substitute our judgment for that of the trial court. That is not our role. See *McIntosh v McIntosh*, 282 Mich App 471, 478; 768 NW2d 325 (2009) ("[A]bsent error in the lower court proceedings, we may not substitute our judgment for that of the trial court."). Because the trial court's findings are supported by the record and are not clearly erroneous, we affirm the determination that plaintiff's parents held a nonmarital ownership interest in the property.

Defendant additionally relies heavily on *Donohue v Donohue*, 134 Mich App 696; 352 NW2d 705 (1984), to argue that property held in the names of third parties should nonetheless be treated as marital where fraud is present. However, the trial court correctly distinguished *Donohue*. In that case, the record contained admissions of intentional deception, false tax filings, concealment of assets, and participation by family members in misleading the opposing party. *Id*. at 699-700. This Court described the defendant's conduct as "reprehensible" and upheld extraordinary relief based on that misconduct. *Id*. at 702. Here, by contrast, the trial court found no such conduct. The absence of a written loan agreement, the lack of interest terms, and the implausibility of an alleged interest-free loan repayable at $500 per month supported the court's conclusion that the parents' contribution was not a loan. While defendant presented contrary testimony, conflicting evidence does not establish clear error, and we will not allow defendant to

relitigate this matter on appeal. *Reed*, 265 Mich App at 150; *Woodington*, 288 Mich App at 355. Accordingly, the trial court did not clearly err in finding that plaintiff's parents held a non-marital ownership interest in the property.

## 2. DISPROPORTIONATE DISTRIBUTION

Defendant next argues that, even if plaintiff's parents held a valid ownership interest, the trial court abused its discretion by failing to award defendant 100% of the marital portion of the residence as a sanction for plaintiff's alleged misconduct. We again disagree.

Michigan law permits courts to consider fault and misconduct when equitably dividing marital property. *Sparks v Sparks*, 440 Mich 141, 158-159; 485 NW2d 893 (1992). However, such considerations presuppose a finding of misconduct. Here, the trial court explicitly rejected defendant's allegations of fraud and deception. Absent such findings, defendant has not demonstrated that an equal division of the marital interest was inequitable. Because the trial court's dispositional ruling was grounded in supported factual findings, we find no abuse of discretion.

## C. PLAINTIFF'S CROSS-APPEAL

On cross-appeal, plaintiff argues that the trial court erred as a matter of law by concluding that his parents collectively owned 50% of the property and that he owned the remaining 50%. We disagree.

The interpretation of a deed is governed by the intent of the grantor as expressed in the language of the instrument. *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 378; 699 NW2d 272 (2005). When the deed language is unambiguous, courts must enforce it as written. *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). The deed at issue here conveyed the property to "William F. Taylor and Jane C. Taylor, husband and wife, and Colby Taylor, as Joint Tenants with Full Rights of Survivorship." Generally, a conveyance to a husband and wife creates a tenancy by the entirety unless a contrary intent is expressed. *Licavoli v Licavoli*, 292 Mich App 450, 454; 807 NW2d 914 (2011). Where multiple grantees are named and two are husband and wife, the spouses are treated as one legal person and take one share as between themselves, and as tenants in common with the remaining grantees. *Id*.; see also Michigan Land Title Standard 6.7.

Nothing in the deed expressed an intent to create three equal one-third interests or to allocate ownership based on contribution, as plaintiff suggests. Under Michigan law, plaintiff's parents took one undivided share as tenants by the entirety, while plaintiff took a separate undivided share. *Licavoli*, 292 Mich App at 454. Although the parties' financial contributions and subjective understandings were relevant to the classification of marital versus nonmarital property, they do not override the plain language of the deed in determining record-title interests. The trial court therefore correctly concluded that plaintiff's parents together held a single 50% interest as tenants by the entirety, and that plaintiff held the remaining 50% interest, which constituted marital property subject to equitable division.

-4-

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick